In re UNISYS CORPORATION RE-TIREE MEDICAL BENEFITS ERISA LITIGATION.

Harley J. Adair, et al.

v.

Unisys Corporation, Appellant.

In re Unisys Corporation Retiree Medical Benefits ERISA Litigation.

Harley J. Adair, et al.

v.

Unisys Corporation

Theodore F. Botzum; Mary P. Castorani; Ernestine DiLoreto; Eugene P. Endress; Dennis F. Gallagher; Henry Geneva; Eli U. Ginsberg; Howard B. Hansell; Cherry L. Savage, Executrix of the Estate of Vernon Horshaw; Helen M. Peterman; Robert J. Schieman; Ruth P. Stringer; Anne S. Walnut; Thomas W. Yeager, Appellants.

Nos. 07–3369, 08–3025, 08–3545, 07–3491, 08–3430.

United States Court of Appeals, Third Circuit.

Argued April 22, 2009.

Filed: Sept. 02, 2009.

Joseph J. Costello, (Argued), Morgan, Lewis & Bockius, Philadelphia, PA, Joseph A. Teklits, Unisys Corporation, Blue Bell, PA, Attorney for Unisys Corporation.

Joseph A. Golden, Pitt, McGehee, Palmer, Rivers & Golden, Royal Oak, MI, Charles Gottlieb, Gottlieb & Goren, Bingham Farms, MI, Scott M. Lempert, Alan M. Sandals, (Argued), Sandals & Associates, Philadelphia, PA, Clayton H. Thomas, Jr., Clayton H. Thomas & Associates, Philadelphia, PA, Attorneys for Theodore F. Botzum, Mary P. Castorani, Ernestine DiLoreto, Eugene P. Endress, Dennis F. Gallagher, Henry Geneva, Eli U. Ginsberg, Howard B. Hansell, Cherry L. Savage, Executrix of the Estate of Vernon Horshaw, Helen M. Peterman, Robert J. Schieman, Ruth P. Stringer, Anne S. Walnut, and Thomas W. Yeager.

Before: SCIRICA, Chief Judge, SLOVITER and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

The plaintiffs in this appeal are fourteen individuals who retired from Unisys Corporation (Unisys) between 1987 and 1989. These individuals were originally employed by Burroughs Corporation (Burroughs) which merged with Sperry Corporation (Sperry) in September 1986 to form Unisys. In 1992, after the plaintiffs had retired, Unisys announced the elimination of its preexisting retiree medical benefits plans and the implementation of a new medical benefits plan effective January 1, 1993. Although this case carries with it a complicated procedural history due to the evolution of the original class actions, which were filed as early as 1992 on behalf of thousands of Burroughs, Sperry, and Unisys retirees, this immediate appeal stems from a July 16, 2007 decision, following a bench trial, in which the District Court determined that Unisys breached its fiduciary duty to twelve of the fourteen plaintiffs. As a remedy, the District Court ordered that the terminated retiree plan be reinstated for these twelve plaintiffs and enjoined Unisys from making any changes to coverage under that plan. Additionally, in a June 26, 2008 decision, the District Court awarded plaintiffs approximately $2.3 million in attorneys' fees. Unisys challenges the District Court's finding of liability, the relief it ordered, and its award of attorneys' fees. In a cross-appeal, the plaintiffs argue that the District Court erred in denying retrospective monetary relief to fully remedy the violations they suffered and also that the District Court erred in concluding two of the fourteen plaintiffs did not establish detrimental reliance and therefore could not prevail on their claims. For the reasons stated below, we will affirm the District Court in all respects.

### I.

Although the factual and procedural history of this extensive litigation have been

discussed in a number of previous opinions, we will recount this background information to the extent it is relevant to the instant appeal.[1] In September 1986, Sperry and Burroughs, two competing computer manufacturers, merged to form Unisys. Prior to the merger, both Sperry and Burroughs provided post-retirement medical coverage to their retired employees at little or no cost to the retirees. After the merger, Unisys continued to provide the pre-merger benefits under a variety of Sperry plans and the Burroughs Medical Plan. Unisys also created its own medical benefits plan, which had different terms and costs than the Burroughs and Sperry plans, for employees who retired after April 1, 1989. In the process of implementing this new plan, Unisys informed employees who were eligible to retire that they could participate in the existing Burroughs or Sperry plans if they retired prior to April 1, 1989, but after that time they would only be eligible to participate in the new Unisys plan. The fourteen individual plaintiffs in the present appeal were originally Burroughs employees and retired from Unisys between December 1986 and April 1, 1989.

On October 30, 1992, Unisys announced that it was terminating the then-existing Burroughs, Sperry, and Unisys plans, and replacing them with a new consolidated plan effective January 1, 1993. Under the new plan, retirees were responsible for increasing levels of premium contribution until January 1, 1996, at which point they were required to pay the full cost of cover-age. In reaction to the change, multiple lawsuits were filed in various jurisdictions alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, and the Panel on Multidistrict Litigation eventually assigned those cases to Judge Cahn in the District Court for the Eastern District of Pennsylvania.[2]

On June 9, 1993, the District Court approved the parties' stipulation to certify three separate classes consisting of approximately 21,000 Sperry, Burroughs, and Unisys retirees. Each of these classes was further divided into "regular" retirees and "early" retirees. The class members in each of the six subclasses asserted three separate claims: breach of contract, equitable estoppel, and breach of fiduciary duty.

On October 13, 1993, the District Court granted summary judgment in favor of Unisys on the estoppel and breach of fiduciary duty claims of the Sperry, Burroughs, and Unisys regular retirees, as well as the breach of contract claims of the Burroughs and Unisys regular retirees. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 837 F.Supp. 670 (E.D.Pa. 1993). The District Court granted Unisys summary judgment on the breach of contract claims of the Burroughs and Unisys regular retirees because the "summary plan descriptions contain uncontradicted and unambiguous reservation of rights language." *Id.* at 681. The District Court granted summary judgment on the breach of fiduciary duty claims of all of the retir-

---

1. For a more detailed review of the evolution of this litigation, see *In re Unisys Corp. Retiree Medical Benefit ERISA Litigation*, 58 F.3d 896, 899–901 (3d Cir.1995) (*Unisys I*); *In re Unisys Corp. Retiree Medical Benefit ERISA Litigation*, 57 F.3d 1255, 1257–61 (3d Cir. 1995) (*Unisys II*); and *In re Unisys Corp. Retiree Medical Benefit ERISA Litigation*, 242 F.3d 497, 499–502 (3d Cir.2001) (*Unisys III*).

2. Although this litigation was originally before Judge Edward N. Cahn, on January 5, 1999, Judge Bruce W. Kauffman was appointed to preside over all of the related matters following Judge Cahn's retirement.

ees because the "alleged oral misrepresentations about the terms of the plans by agents of Unisys and its successors, in their capacity as plan administrators, do not constitute breaches of their fiduciary duty." *Id.* And lastly, the District Court granted summary judgment in favor of Unisys on all of the estoppel claims because the plaintiffs "failed to demonstrate that they relied to their detriment on oral and written representations of the plan administrators." *Id.* As a result of this decision, only the breach of contract claims of the Sperry regular retirees and all claims of all early retirees remained viable.

Thereafter, the District Court conducted a seven-day bench trial on the remaining claims. Following trial, but before closing arguments, the Sperry and Burroughs early retirees reached a settlement with Unisys; however, the claims of the Unisys early retirees and the breach of contract claims of the Sperry regular retirees remained viable. On June 23, 1994, the District Court entered judgment in favor of Unisys on all of these remaining claims. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, No. MDL 969, 1994 WL 284079 (E.D.Pa. June 23, 1994). However, the District Court also granted the Sperry retirees' motion for reconsideration of their breach of fiduciary duty claim in light of the decision in *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1294 (3d Cir.1993), rendered during the pendency of the litigation, in which this Court held that a direct action for breach of fiduciary duty exists in the "other appropriate equitable relief" clause of ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). The District Court explained that "based on the evidence and the law in this circuit, it seems possible that at least some plaintiffs will be able to sustain a [breach of fiduciary duty] claim." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 1994 WL 284079, at *27.

The District Court certified this portion of its decision for immediate interlocutory appeal. The plaintiffs also appealed all of the District Court's summary judgment rulings with the exception of the breach of fiduciary duty claims of the Burroughs and Unisys regular retirees (which were being held in abeyance by the District Court).

On June 28, 1995, in separate opinions, our Court affirmed the District Court in all respects. *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896 (3d Cir.1995) (*Unisys I*) (affirming grant of summary judgment on breach of contract and equitable estoppel claims); *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255 (3d Cir.1995) (*Unisys II*) (affirming reinstatement of breach of fiduciary duty claims). Accordingly, the Sperry regular retiree breach of fiduciary duty claims were remanded for adjudication. On August 13, 1996, the District Court also reinstated the breach of fiduciary duty claims of the Burroughs and Unisys regular retirees. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, No. MDL 969, 1996 WL 455968 (E.D.Pa. Aug.13, 1996). These breach of fiduciary duty claims of the Sperry, Burroughs, and Unisys regular retirees were the only claims that remained from the original class action litigation.

On March 10, 1997, the District Court granted summary judgment in favor of Unisys on the breach of fiduciary duty claims of over 14,000 retirees after it concluded that "the statute of limitations bars the claims of many of the retirees, and that many of the retirees cannot demonstrate the resulting harm required to maintain a breach of fiduciary duty claim." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 957 F.Supp. 628, 646 (E.D.Pa.1997). But four years later, on March 9, 2001, our Court reversed this summary judgment ruling and reinstated

the breach of fiduciary duty claims of these individuals for two reasons. *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497 (3d Cir.2001) (Unisys II). First, we interpreted ERISA's statute of limitations for breach of fiduciary duty claims and concluded that the "summary judgment entered by the District Court was overbroad and must be reversed." *Id.* at 507. Second, we rejected the "District Court's view that *Unisys II*, as a matter of law, limits recovery on the breach of fiduciary duty claims to claims based on voluntary decisions to retire." *Id.* at 508.

After this decision, the parties agreed to settle all of the remaining Sperry regular retiree breach of fiduciary duty claims. As a result, the only remaining claims were those of the approximately 10,000 Burroughs and Unisys regular retirees for breach of fiduciary duty. On February 4, 2003, the District Court granted Unisys' motion to decertify the Burroughs and Unisys regular retiree subclasses because of the need to make individual factual determinations in the adjudication of the claims, and thereafter five separate multi-plaintiff breach of fiduciary duty actions were filed against Unisys by approximately 900 of these former class members. *In re Unisys Corp. Retiree Med. Benefits Litig.*, No. MDL 969, 2003 WL 252106 (E.D.Pa. Feb.4, 2003).

The claims of the Burroughs regular retirees who continued in the litigation were filed together under the caption of *Adair, et al. v. Unisys Corp.* On July 15, 2005, after more than ten years of developments in the litigation, the parties agreed to sever from the *Adair* complaint the breach of fiduciary duty claims of fourteen individuals, namely the plaintiffs who are currently before this Court, so they could proceed to trial before Magistrate Judge Thomas J. Rueter. They also stipulated that the District Court would review all findings of fact for clear error.

From October 17 to October 26, 2005, Magistrate Judge Rueter presided over a bench trial on these claims and, on September 29, 2006, he issued a Report and Recommendation, concluding that twelve of the fourteen plaintiffs had proven that Unisys breached its fiduciary duty to them as a result of the company's affirmative misrepresentations and inadequate disclosure of certain information about the retirees' medical benefits plan. *In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, No. MDL 969, 2006 WL 2822261, at *58 (E.D.Pa. Sept.29, 2006) (Magistrate Report). The Magistrate Judge recommended that the District Court enter an equitable decree restoring the Burroughs Medical Plan for the twelve retirees and reforming the plan to preclude any right to terminate or modify their benefits. *Id.* at *65.

On July 16, 2007, the District Court issued a decision adopting in part and modifying in part the Magistrate Judge's Report and Recommendation.[3] *In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, No. MDL 969, 2007 WL 2071876 (E.D.Pa. July 16, 2007) (District Court Opinion). The District Court adopted all of the Magistrate Judge's factual findings and the legal conclusion that Unisys breached its fiduciary duty to twelve of the plaintiffs. *Id.* at *3, *9. The District Court adopted the Magistrate Judge's recommendation to restore the Burroughs Medical Plan, but instead of ordering the reformation of the plan, it enjoined Unisys from amending or terminating the plan as to the twelve retirees, thus requiring Unisys to

---

**3.** Although the decision was filed on July 16, 2007, the corresponding order, from which both parties appeal, was not entered on the docket until July 18, 2007.

continue to pay the premiums for their medical coverage. *Id.* at * 10. The District Court also denied the plaintiffs' request for monetary damages under a claim for restitution. *Id.* at *11. Lastly, on June 26, 2008, the District Court awarded plaintiffs $2,266,357.92 in attorneys' fees and $97,779.98 for litigation expenses. *In re Unisys Corp. Retiree Med. Benefits Erisa Litig.,* No. MDL 969, 2008 WL 2600364 (E.D.Pa. June 26, 2008) (Fee Opinion). Unisys timely appealed the District Court's orders and the plaintiffs cross-appealed.[4]

## II.

■ The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), and we have jurisdiction to review its orders pursuant to 28 U.S.C. § 1291. "In an appeal from an ERISA bench trial, we review findings of fact for clear error but have plenary review over the District Court's conclusions of law." *Vitale v. Latrobe Area Hosp.,* 420 F.3d 278, 281 (3d Cir.2005). "Determining what remedies are available under a statute is a question of statutory interpretation that requires de novo review. Therefore, we review de novo the District Court's grant of an injunction and its denial of restitution" and other forms of relief. *Pell v. E.I. DuPont de Nemours & Co.,* 539 F.3d 292, 305 (3d Cir.2008) (citation omitted). "An award of ... attorneys' fees to a prevailing plaintiff in an ERISA case is within the discretion of the district court and may only be reversed for abuse of discretion." *Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 305 (3d Cir.2008) (internal quotation marks omitted). To that end, "[w]e review the District Court's factual determinations ... for clear error," and "[w]e exercise plenary

review over the legal standards employed by the District Court used in calculating the award." *Id.* (internal quotation marks omitted).

## III.

### A. Breach of Fiduciary Duty Claims

■ Unisys challenges the District Court's conclusion that Unisys breached its fiduciary duty to twelve of the fourteen plaintiffs. ERISA § 404 provides:

"[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;"

29 U.S.C. § 1104(a)(1). We have explained that "[a]lthough the statute articulates a number of fiduciary duties, it is not exhaustive. Rather, Congress relied upon the common law of trusts to 'define the general scope of [trustees' and other fiduciaries'] authority and responsibility.'" *Bixler,* 12 F.3d at 1299 (quoting *Cent. States Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985)); *see In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 434 (3d Cir.1996) (noting that ERISA § 404 "in essence, co-

---

**4.** In September 2008, Unisys reached an agreement with the remaining Burroughs plaintiffs to settle their breach of fiduciary duty claims.

difies and makes applicable to ... fiduciaries certain principles developed in the evolution of the law of trusts" (internal quotation marks omitted)). Accordingly, an ERISA "fiduciary may not, in the performance of [its] duties, 'materially mislead those to whom the duties of loyalty and prudence are owed.'" *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir.2000) (quoting *Unisys II*, 57 F.3d at 1261). This responsibility encompasses "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler*, 12 F.3d at 1300; *see Unisys II*, 57 F.3d at 1264 (explaining the duty "not to misinform employees" through either "misrepresentations" or "incomplete, inconsistent or contradictory disclosures"). In short, "when a fiduciary speaks, it must speak truthfully, and when it communicates with plan participants and beneficiaries it must convey complete and accurate information that is material to their circumstance." *In re Unisys Sav. Plan Litig.*, 74 F.3d at 442 (internal quotation marks, citations, and brackets omitted).

Thus, as is the case in the present appeal, a breach of fiduciary duty claim may be premised on either a misrepresentation or an omission. To establish such a breach, a plaintiff must demonstrate that: (1) the defendant was "acting in a fiduciary capacity"; (2) the defendant made "affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries"; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir.1999); *accord Burstein v. Ret. Account Plan for Employees of Allegheny Health, Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir.2003)

(discussing the test for misrepresentations); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir.2001) (same).

As for the first element, "ERISA ... defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Accordingly, "[f]iduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir.1990). Accordingly, "a person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan." *Varity Corp. v. Howe*, 516 U.S. 489, 527, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (internal quotation marks omitted). "A plan administrator ... acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees." *Adams*, 204 F.3d at 492. However, "[t]he amendment of an ERISA plan is not a fiduciary act governed by ERISA." *Leuthner v. Blue Cross & Blue Shield*, 454 F.3d 120, 127 (3d Cir.2006).

The second element, a misrepresentation or inadequate disclosure, is best understood when viewed in conjunction with the third element, which requires that the misrepresentation or omission be material. "A misleading statement or omission by a fiduciary" is material if "'there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision,'" *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir.2000) (quoting *Unisys II*, 57 F.3d at 1264), or "a harmful decision regarding benefits," *Daniels*, 263 F.3d at 76. Determining whether a misrepresen-

tation or inadequate disclosure bears a substantial likelihood of misleading a reasonable employee may involve examining whether the "fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused" by the statement or omission. *Burstein*, 334 F.3d at 386 n. 31; *see also Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1182 (3d Cir.1996) (describing omitted information as material if it is "known to the fiduciary but unknown to the beneficiary" and necessary for the beneficiary to "know for its own protection"). Thus, while showing that the fiduciary "had actual knowledge that a particular employee was about to be misled" is not required to satisfy this element, establishing a fiduciary's liability as a result of inadequately disclosed information may involve an inquiry into "the employer's knowledge of an employee's knowledge and understanding," *Daniels*, 263 F.3d at 76, in order to determine if the employer was aware of the confusion generated by its silence.

Finally, although we have at times described the fourth element as "resulting harm" to the plaintiff, *Unisys II*, 57 F.3d at 1265, we have since clarified that this element requires a showing of detrimental reliance by the plaintiff. *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 571 (3d Cir.2006). Notably, detrimental reliance is not limited to the retirement decision alone; rather it may encompass decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement. *Unisys III*, 242 F.3d at 508 (rejecting the view that recovery for breach of fiduciary duty claims was limited to "claims based on voluntary decisions to retire"); *cf. Bixler*, 12 F.3d at 1301–03; *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d Cir.1994).

Turning to the instant case, the essence of the plaintiffs' breach of fiduciary duty claims, as summarized by the District Court, is "that Unisys (1) misrepresented that their retiree medical benefits were vested and could not change despite clauses in certain plan documents reserving the right to modify or terminate those benefits, and (2) failed adequately to advise them of that reserved right." District Court Opinion, 2007 WL 2071876, at *1. The District Court concluded:

> "The alleged misrepresentations made by Unisys may not have been technically false, but the factual findings of the Magistrate Judge establish that they were nonetheless misleading. They were misleading because [Unisys] failed to qualify adequately the information it supplied regarding the low cost of the Burroughs plan with an acknowledgment that [Unisys] could modify or terminate the retirees' medical benefits. [Unisys] knew its employees were confused and that this confusion would benefit the company financially."

*Id.* at *5.

■■■ On appeal, Unisys contends that the District Court erred when it concluded that Unisys misrepresented and failed to disclose material information in violation of its fiduciary duty under ERISA, although Unisys also made clear in both its briefs and at oral argument before this Court that it does not challenge the District Court's factual findings and "does not dispute what Plaintiffs claim they were told or not told about retiree medical benefits." In support of its position, Unisys emphasizes that it satisfied its statutory disclosure obligations by disclosing, in written communications, its right to amend or terminate the Burroughs Medical Plan, and that this Court has previously held that its reservation of rights clauses contained in

its summary plan descriptions were unambiguous. Relying on these two points, Unisys argues that its oral communications regarding plan benefits did not "constitute an 'affirmative misrepresentation' or 'failure to disclose' simply because each statement was not coupled with an additional warning that the benefits were subject to change." Citing our decisions in *Leuthner*, 454 F.3d at 129, and *Fischer v. Philadelphia Electric Co.*, 96 F.3d 1533, 1539 (3d Cir.1996), Unisys also stresses that at the time its oral statements were made, it was not planning to change retiree benefits, so it cannot be found to have breached its fiduciary duty to the plaintiffs. Unisys raises this last argument in the context of the second element, asserting that its oral statements were an accurate reflection of its intent when the statements were made (and therefore did not constitute misrepresentations), and in the context of the third element, asserting that it was not "seriously considering" any changes to the medical benefits plans at the time its statements were made (and therefore the allegedly undisclosed information was not material).

The plaintiffs, in response, contend that "[t]he district court correctly ruled on the basis of the extensive record that this case does not involve truthful, accurate statements of intention by Unisys, but instead involves statements that were misleading, company knowledge that employees were confused, and exploitation of this confusion to 'benefit the company financially.'" The plaintiffs also maintain that the District Court "correctly concluded that this Court's decisions foreclosed an argument by Unisys that its [summary plan descriptions] and other documents were sufficient to avoid liability."

Based on the applicable legal standards and the factual findings of the Magistrate Judge, which were adopted in their entirety by the District Court, Unisys' arguments must be rejected. With respect to the first element, fiduciary status, the Magistrate Judge found the following:

> "[E]ach of the Trial Plaintiffs have established that [Unisys'] agents communicated with the Trial Plaintiffs about retiree medical benefits and that such [Unisys] employees had apparent, if not actual, authority to make such communications. In addition to the documentation that [Unisys] distributed regarding retiree benefits, each Trial Plaintiff credibly testified that he or she was advised by either a member of the human resources staff or a supervisor about the cost and duration of retiree medical benefits. It is apparent from the trial testimony that [Unisys] delegated to the human resources staff and other managers the function of advising employees about benefits."

Magistrate Report, 2006 WL 2822261, at *45. Although Unisys does not appear to contest this element on appeal, we conclude in any event that the Magistrate Judge's determination is legally sound, as we have stated that an employer "acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees," *Adams*, 204 F.3d at 492.

With respect to the second element, the Magistrate Judge concluded that the facts supported finding that Unisys both misrepresented and inadequately disclosed information regarding retirement benefits. As to the former, the Magistrate Judge stated that it

> "finds credible the testimony of each of the Trial Plaintiffs that [Unisys] misrepresented the cost and duration of retiree medical benefits under the Burroughs Plan by advising each of them that he or she would have free or low-cost medical benefits throughout retirement or for life.
>
> * * *

In determining whether to retire, [Unisys] counseled each Trial Plaintiff, either individually or as part of a group meeting, about the cost and duration of retiree medical benefits, representing that the benefits would cost a retiree $20 per month until age sixty-five, after which time there would be no cost to the retiree."

Magistrate Report, 2006 WL 2822261, at *47–48. The Magistrate Judge was correct to conclude that these communications amounted to misrepresentations. Although the statement that "benefits would cost a retiree $20 per month until age sixty-five, after which time there would be no cost to the retiree" was not in and of itself false, it was nevertheless a misrepresentation because it created the impression that the retirees would enjoy these benefits for the remainder of their lifetimes without the possibility of change. As the Magistrate Judge observed, the message that Unisys communicated to its employees in the course of counseling them about retirement was at best a half-truth because there was no mention of Unisys' right to amend or terminate the plan at any point in the future. In essence, by failing to qualify its statements, Unisys placed a period where it should have placed a comma in the course of explaining retiree medical benefits to these plaintiffs and, in doing so, misrepresented the cost and duration of the benefits.

Even though, as Unisys points out, the words "guaranteed" or "vested" were not used in describing the plaintiffs' retiree benefits under the Burroughs Medical Plan, informing the plaintiffs that they would enjoy "free or low-cost medical benefits throughout retirement or for life" created the same impression and therefore was a misrepresentation. Additionally, we are not persuaded by Unisys' argument that its statements cannot form the basis of a breach of fiduciary duty claim be-

cause, at the time of its oral communications with the plaintiffs, Unisys did not intend to change the plan; this contention is irrelevant because Unisys had the ability to change the plan and its statements did not make this clear. See Unisys II, 57 F.3d at 1265 n. 15 ("[W]hile Unisys may not have anticipated ending the plans, it knew that it had the ability to do so and it knew that its employees were receiving answers to their specific inquiries that were vague, misleading and contradictory."). Thus, given the content of Unisys' statements and the context in which these statements were made, the communications constituted misrepresentations and the Magistrate Judge did not err in concluding as much.

In addition to finding that Unisys misrepresented information, the Magistrate Judge also found that Unisys failed to adequately disclose benefits information because

"[a] representation to the effect that the benefits would cost $20 per month for the retiree and then be provided at no cost for the rest of retirement or the retiree's life does not convey complete information if [Unisys] retains the right to change or terminate those benefits at any time."

Magistrate Report, 2006 WL 2822261, at *53. Relevant to Unisys' argument that it disclosed its reservation of rights in a summary plan description, the Magistrate Judge found that Unisys had a "policy that the retiree [summary plan description] was made available to those who requested it, but it was only distributed to retirees after they had submitted an enrollment card to receive retiree medical benefits under the Burroughs Plan." Id. at *51. The Magistrate Judge went on to explain that "there is a significant temporal aspect to the present factual scenario. [Unisys'] lack of

complete disclosure regarding its reserved right to change or terminate retiree medical benefits occurred when [Unisys] was specifically counseling the Trial Plaintiffs about retiree benefits, at a time when the Trial Plaintiffs were making retirement decisions." *Id.* at *53. Therefore, Unisys' failure to disclose at this particular time its ability to modify or wholly eliminate the plaintiffs' medical benefits at any point in the future, despite its unambiguous reservation of rights clause contained in the summary plan description, resulted in an inadequate disclosure of information. Consequently, Unisys' arguments that it disclosed its reservation of rights in the summary plan descriptions and other documentation is unavailing because Unisys did not present this information when it was counseling its employees on their retirement decisions. *See Adams*, 204 F.3d at 492 ("[A] company cannot insulate itself from liability by including unequivocal statements retaining the right to terminate plans at any time in the [summary plan descriptions].").

Turning to the third requirement, materiality, we conclude that the Magistrate Judge's analysis correctly applied our caselaw on this element by focusing on whether "there [was] a substantial likelihood" that the misrepresentations and omissions "would mislead a reasonable employee in making an adequately informed retirement decision," *Unisys II*, 57 F.3d at 1264, or "a decision regarding his benefits under the ERISA plan," *Daniels*, 263 F.3d at 73. We agree with the Magistrate Judge's conclusion that Unisys' "misrepresentations were material in that there was a substantial likelihood that each misrepresentation would mislead a reasonable employee in making a decision regarding his or her retiree medical benefits under the Burroughs Plan," and, in the context of Unisys' inadequate disclosures, that Unisys "knew of the confusion generated by

its silence." Magistrate Report, 2006 WL 2822261, at *47, *51. As the Magistrate Judge determined, "a reasonable fiduciary would have foreseen that its conduct towards each Trial Plaintiff would result in important decision making on his or her part based on a mistaken belief that each possessed guaranteed lifetime benefits." *Id.* at *48, *51.

The Magistrate Judge's conclusion was well-supported by the record. In particular, the Magistrate Judge found that "the cost and duration of retiree medical benefits is a significant factor to an employee who is contemplating whether retirement is feasible at the time," and that Unisys "knew that the retirement decision was significant, that the cost of retiree medical benefits was significant, and that participation in a specific medical plan was considered a powerful motivation in the retirement decision." *Id.* at *48, *53. Additionally, the Magistrate Judge observed that "[t]he trial record makes clear that the employee population did not understand that changes to the Burroughs Plan for active employees also translated to changes to retiree medical benefits"; Unisys "frequently referred to retiree medical benefits as though they were provided under a separate plan"; and "despite the actions it took to explain the benefits it provided, [Unisys] was aware that its employees were confused about benefits." *Id.* at *48, *51, *52. Moreover, the Magistrate Judge recognized that it could not "simply ignore the existence of the [summary plan description]," but nonetheless determined that "[e]ven taking into consideration the reservation of rights provisions" in these documents, it was foreseeable that employees in the position of the plaintiffs would rely to their detriment upon Unisys' misleading statements about the cost and duration of retiree medical benefits at the time they

were seeking counsel about their retirement decisions. *Id.* at *47–48.

Unisys' argument that its reservation of the right to amend the Burroughs Medical Plan was not material because it was not considering any changes to the plan at the time it was communicating with the plaintiffs is of no consequence because the ability to change the plan was critical information that Unisys knew and the beneficiaries needed to know in order to protect themselves from potential harm. Additionally, because it was foreseeable that these plaintiffs would rely on Unisys' misleading communications in making important decisions about their retirement, and because Unisys was aware of pervasive confusion among its employees, it was not necessary to "show[ ] that the employer had actual knowledge that a particular employee was about to be misled." *Daniels*, 263 F.3d at 76. For all of these reasons, the Magistrate Judge did not err in concluding that the materiality element was satisfied with respect to both the misrepresentations and the inadequate disclosures.

As to the fourth element, detrimental reliance, the Magistrate Judge emphasized that the plaintiffs needed to "prove on an individual basis the extent of the reliance and resulting harm." Magistrate Report, 2006 WL 2822261, at *48. The Magistrate Judge then detailed his findings for each plaintiff and concluded that twelve of them demonstrated that they reasonably relied on Unisys' misrepresentations and inadequate disclosures to their detriment; however the Magistrate Judge determined that two of the retirees, plaintiffs DiLoreto and Walnut, did not establish detrimental reliance. The District Court agreed with this conclusion. It reasoned that plaintiff DiLoreto's testimony that she refused an offer to return to work because of her reliance on representations about her re-

tiree benefits was undermined by the fact that she had been involuntarily terminated. District Court Opinion, 2007 WL 2071876, at *9. As for plaintiff Walnut, the District Court reasoned that although he testified that he relied on Unisys' misrepresentations in deciding to retire, this testimony was undermined by the undisputed fact that he retired as part of a settlement agreement stemming from a lawsuit he brought against Unisys. *Id.*

In their cross-appeal, the plaintiffs contend that the District Court's findings with respect to these two plaintiffs on the element of detrimental reliance are clearly erroneous. Specifically, they argue that the District Court erred by not considering that an employee's "decisions outside the retirement context also can establish detrimental reliance," and by placing the burden of demonstrating detrimental reliance on the plaintiffs. In response, Unisys asserts that the plaintiffs' arguments ignore the deferential clear error standard we use to review factual determinations, including those findings that establish detrimental reliance, and instead attempt to have us reweigh evidence and reject credibility determinations made by the Magistrate Judge. Unisys also argues that the plaintiffs incorrectly assert that they do not have to establish detrimental reliance.

As our discussion of the elements of a breach of fiduciary duty claim makes plain, a plaintiff must establish detrimental reliance in order to prevail on such a claim. *See Hooven*, 465 F.3d at 571. Consequently, the plaintiffs' argument that DiLoreto and Walnut did not need to establish detrimental reliance in order to succeed on their claims is without merit. Moreover, the District Court specifically noted that it was not limited to considering retirement decisions, District Court Opinion, 2007 WL 2071876, at *9, as did the Magistrate Judge, reasoning that each plaintiff "may

be able to establish detrimental reliance by proving that he or she declined other employment opportunities, chose to forego the opportunity to purchase supplemental health insurance, or made other important financial decisions for his or her retirement," Magistrate Report, 2006 WL 2822261, at *54. As a result, the plaintiffs' contention that the District Court erred by not considering decisions outside the retirement context is also without merit. Because we do not discern any clear error with respect to the individual factual findings that the District Court made for each of the plaintiffs or any legal error in the application of our caselaw to the facts of each plaintiff's claim, we agree with the District Court's conclusions on this element.

In sum, the facts of this case, as determined by the Magistrate Judge, demonstrate that Unisys, while acting in its fiduciary capacity, breached its duty to twelve of the fourteen plaintiffs by both misrepresenting and inadequately disclosing material information regarding retiree medical benefits which these twelve plaintiffs relied on to their detriment. Accordingly, the District Court, through its adoption of the Magistrate Judge's Report and Recommendation, correctly concluded that twelve plaintiffs could prevail on their breach of fiduciary duty claims and we will affirm this decision.

## B. Equitable Damages for Breach of Fiduciary Duty

Where a plaintiff establishes a breach of fiduciary duty, the plaintiff is entitled to equitable relief pursuant to ERISA § 502(a), which provides that:

"A civil action may be brought—

\* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce the provisions of this subchapter or the terms of the plan...."

29 U.S.C. § 1132(a)(3). "In light of ERISA's detailed enforcement scheme," courts must be careful to avoid creating "'remedies not specifically authorized by its text.'" *Pell*, 539 F.3d at 305 (quoting *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)). To clarify the scope of relief authorized by ERISA, the Supreme Court in *Great–West* emphasized that "equitable relief must mean *something* less than *all* relief," and therefore "a reading of the statute that would extend the relief obtainable under § 502(a)(3) to whatever relief a court of equity is empowered to provide in the particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority)" had to be rejected. 534 U.S. at 209–10, 122 S.Ct. 708 (internal quotation marks omitted). The Supreme Court explained that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity.'" *Id.* (quoting *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063). Injunctions, mandamus, and restitution—but not compensatory damages—are categories of relief that the Supreme Court has recognized were typically available in equity. *See id.* at 215, 122 S.Ct. 708; *Mertens*, 508 U.S. at 256, 113 S.Ct. 2063.

However, because restitution can be either legal or equitable, it is necessary to determine whether a particular request for restitution constitutes permissible equitable relief under ERISA. *See Great–West*, 534 U.S. at 212, 122 S.Ct. 708 ("[N]ot all relief falling under the rubric of restitution

is available in equity."); *Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 211–12 (3d Cir.2004) ("[T]o determine whether a specific form of underlying relief requested is available under § 502(a)(3)(B), we must consider whether that relief was typically available at law or in equity and, in the case of restitutionary relief, whether the relief requested was in fact a form of equitable restitution."). In *Great–West,* the Supreme Court explained certain distinctions between legal and equitable restitution:

"In cases in which the plaintiff could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit that the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit.... In contrast, a plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."

534 U.S. at 213, 122 S.Ct. 708 (internal quotation marks omitted). Crucial to the question of whether restitution lies in equity is if the action seeks "to restore to the plaintiff particular funds or property in the defendant's possession," as opposed to seeking to impose personal liability on the defendant. *Id.* at 214, 122 S.Ct. 708.

In the present case, after concluding that Unisys breached its fiduciary duty to twelve of the plaintiffs, the Magistrate Judge recommended that Unisys be ordered to provide retiree medical benefits to the prevailing plaintiffs under a reconstituted medical plan and that the benefit plan be reformed to remove Unisys' right to reduce or terminate the benefits. Magistrate Report, 2006 WL 2822261, at *65. The rationale for the first part of this remedy was that "[b]ecause the plan in which the Prevailing Plaintiffs participated no longer exists, and they were promised that the plan would provide medical coverage at no cost at age sixty-five," it would be appropriate equitable relief to issue "a decree ordering Defendant to restore the Burroughs Plan as it existed at the time each Prevailing Plaintiff retired, or that Defendant create a new medical plan with identical provisions as the Burroughs Plan." *Id.* at *63.

The District Court accepted the Magistrate Judge's recommendation to restore the plaintiffs' medical plan but opted not to reform the plan. It explained:

"Rather than reform the benefit plan, the court will modify the Report and Recommendation to permanently enjoin Unisys from reducing or terminating the retirees' benefits in the reconstituted Plan. Since Trial Plaintiffs were assured that their benefits would not be terminated or reduced, Unisys will be enjoined from reducing or terminating their reinstated benefits." [5]

District Court Opinion, 2007 WL 2071876, at *10. The District Court also acknowledged that, in addition to prospective relief, the plaintiffs sought "payment representing the amount Unisys financially gained as a result of their decision to retire," and argued that "the equitable remedies of 'constructive trust' and 'accounting for profits' permit them to recover money damages." *Id.* at *11, *12. With respect to the plaintiffs' constructive

---

5. The District Court explained that reformation, as opposed to an injunction, would have been necessary if it was awarding money damages for breach of the reformed contract. District Court Opinion, 2007 WL 2071876, at *10 n. 7.

trust theory of recovery, the District Court stated that it was contrary to the Supreme Court's explicit language in *Great–West* that a constructive trust can only be placed on "'particular funds or property in the defendant's possession,'" and that, because the plaintiffs were unable to "identify the particular property that belongs to them, [they were] seeking the same relief as every claimant who seeks monetary damages: money that they believe belongs to them." District Court Opinion, 2007 WL 2071876, at *13 (quoting 534 U.S. at 213, 122 S.Ct. 708). As for the plaintiffs' accounting for profits theory of recovery, the District Court explained that it was still necessary to "first identify '*particular* funds or property in the defendants' possession' that belongs in good conscience" to them, and because the plaintiffs "failed to identify a specific fund or property from which they are entitled to the profits," the District Court would not order this type of equitable relief. *Id.* at *13–14.

### 1. The Injunctive Relief

■ Unisys argues that both components of the injunction ordered by the District Court—reinstating the Burroughs Medical Plan for these twelve plaintiffs and enjoining Unisys from making any changes to the plan—"exceed [ERISA's] statutory remedial authority." Unisys' chief complaint is that the injunction restricts it "in its capacity as plan sponsor and regulates non-fiduciary conduct," and, as a result, the remedy "cannot be reconciled with the settlor/fiduciary distinction recognized in ERISA" because it eliminates "Unisys' right, as plan sponsor, to terminate retiree medical benefits 'for any reason at any time.'" Unisys continues that "any remedy must address Unisys in its fiduciary capacity and be limited to enjoining fiduciary conduct." Unisys also argues that previous decisions related to this litigation determined that the plaintiffs "were not entitled to vested retiree medical benefits in the first place," so the relief ordered by the District Court is inappropriate.

The plaintiffs respond that the injunctive relief ordered by the District Court was appropriate because it "compels future payments of medical benefits under a re-constituted plan," and "[t]he value of these benefits cannot be calculated in advance, because benefits depend on actual medical usage by each retiree and spouse and medical inflation as well as length of time each will survive." The plaintiffs also contend that, notwithstanding Unisys' argument to the contrary, "the injunction here responds directly to [Unisys'] fiduciary violation" and requires Unisys "to provide the equivalent of the lifetime benefits it misrepresented the retirees would have." Alternatively, the plaintiffs maintain that the Magistrate Judge's recommendation to reform the plan would be appropriate equitable relief as well.

In the context of a successful equitable estoppel claim under ERISA, we have previously stated that "the main question in assessing injunctions such as the one before us is whether the injunction constitutes a permissible equitable remedy or an impermissible legal one." *Pell,* 539 F.3d at 306. In *Pell,* we explained why the injunction was an equitable remedy and not a legal one:

> "Injunctions are legal remedies if they 'compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, [a remedy that] was not typically available in equity.' The injunction imposed by the District Court in this case is forward-looking and entitles [the beneficiary] to an amount of money that cannot be calculated with specificity (since it is unknown how long he will survive and be entitled to benefits.) Therefore,

the injunction is an equitable remedy that is permissible under ERISA."

*Id.* at 307 (citation omitted). In this same decision, we rejected the argument that "ERISA provides a cause of action only to recover the benefits that are due under the terms of an employee benefit plan" and that a beneficiary "cannot receive relief beyond that specified by the plan terms." *Id.* As support for rejecting these arguments, we cited *Unisys II,* 57 F.3d at 1264–65, and noted that the rationale applied equally for a breach of fiduciary duty claim as for an equitable estoppel claim. *Pell,* 539 F.3d at 307. Thus, we concluded that the relief was appropriate because it

> "left the plan intact while acknowledging that equity requires [the employer] to pay [the beneficiary] a higher pension amount. Our case law clearly establishes the right of a plaintiff ... to receive relief beyond the benefits specified in the plan, and the District Court injunction did not rewrite or informally amend the plan."

*Id.* at 308.

Although *Pell* involved pension benefits, the reasoning applies with equal force to the present case. Here, as in *Pell,* the injunction "is forward-looking and entitles [the plaintiffs] to an amount of money that cannot be calculated with specificity." *See id.* at 307. Because the injunction effectuates prospective relief, as opposed to "compell[ing] the payment of money past due under a contract, or specific performance of a past due monetary obligation," it is an equitable injunction and not a legal one. *See id.* Moreover, we reject Unisys' argument that the relief goes beyond the terms of the plan by granting vested benefits because, as in *Pell,* the plaintiffs are entitled "to receive relief beyond the benefits specified in the plan," *see id.* at 308, where, as a result of Unisys' breach, the plaintiffs were led to believe that they had lifetime benefits even though the plan itself did not provide for such vested benefits. The relief does not effectuate an informal plan amendment, but instead addresses Unisys' breach of fiduciary duty by preventing Unisys from denying the plaintiffs the benefits that its communications misled them to believe they would continue to enjoy for life. We also disagree with Unisys that the injunction impermissibly regulates its settlor activity. The injunction is designed to remedy Unisys' violation of its fiduciary duty to the plaintiffs for actions it took in its fiduciary capacity, and the specific equitable relief provision of ERISA, which applies in this case, trumps the application of the general principle that ERISA does not regulate settlor activity. Thus we conclude that the remedies ordered by the District Court were carefully prescribed and are consistent with both the statutory language of ERISA and applicable caselaw, and we will therefore uphold the remedies the District Court imposed.

### 2. Additional Theories for Relief

In their cross-appeal, the plaintiffs argue that the District Court committed error by refusing to order retrospective monetary relief because it confused the requirements of a constructive trust with those governing the distinct equitable remedy of disgorgement of profits. The plaintiffs argue that "[t]here is no doubt that Unisys obtained 'profits' as a result of its violations," and they assert, without support from any legal authority, that "[i]n equity, 'profits' include any form of benefit the wrongdoer derived as a result of its violation, including savings of money." According to the plaintiffs, the "significant financial advantages" that flowed to Unisys as a result of its fiduciary violation include the following:

> "(1) the avoidance of wages, pension and savings plan accruals, and other fringe

benefits it would have had to pay to the retirees if they had not been induced to retire or resign; (2) premiums paid to Unisys by some retirees for medical coverage under the replacement Unisys retiree medical plan that took effect January 1, 1993; (3) medical expenditures unjustly shifted to retirees who secured their health insurance coverage from third parties; (4) savings to Unisys as a result of providing a plan of benefits that was inferior to the promised Burroughs benefits; and (5) additional gains to Unisys from its improper retention and use of these funds."

Unisys responds by arguing that the plaintiffs are really seeking compensatory damages under the guise of an equitable remedy. Unisys contends that, regardless of what the plaintiffs call their request, they are attempting "to expand the limited scope of the 'accounting for profits' remedy traditionally available in equity to encompass all forms of restitution for unjust enrichment." Moreover, Unisys asserts that the plaintiffs cannot prevail on their request for an equitable accounting for profits without first identifying the underlying property from which the profits are purportedly derived.

Requests for monetary damages are suspect in this context. In the words of the Supreme Court:

"Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty. And money damages are, of course, the classic form of *legal* relief."

*Great–West,* 534 U.S. at 210, 122 S.Ct. 708 (internal quotation marks and citation

omitted). Although "some forms of equitable relief—such as constructive trusts, equitable liens, or accounting for the profits derived from wrongly held property—include the payment of money ..., these forms of relief are available in limited circumstances." *Eichorn v. AT & T Corp.,* 484 F.3d 644, 655 n. 6 (3d Cir.2007). Thus, for the plaintiffs, the question here is not whether disgorgement of profits or accounting for profits is an equitable remedy, but rather whether the plaintiffs have demonstrated that their claims for relief meet the requirements for applying this type of remedy. We agree with the District Court that the plaintiffs cannot recover under this theory without first identifying the profit generating property or money wrongly held by Unisys. *See Great–West,* 534 U.S. at 214 n. 2, 122 S.Ct. 708. Because the plaintiffs are unable to identify "money or property ... belonging in good conscience" to them and clearly "trace[able] to particular funds or property in the defendant's possession," *see id.* at 213, 122 S.Ct. 708, they cannot recover profits from Unisys as a form of equitable relief. Consequently, the District Court properly denied the plaintiffs' request for retroactive monetary damages.

Moreover, a review of the "significant financial advantages" that the plaintiffs claim Unisys reaped at their expense, and for which the plaintiffs seek to recover money, makes it all the more apparent that the plaintiffs are trying to recoup compensation for their own expenditures as opposed to profits held by Unisys to which they are entitled. *See Eichorn,* 484 F.3d at 656 (explaining that when the relief sought is measured in terms of the plaintiffs' loss as opposed to the defendant's gain, the monetary damages sought are in the nature of a legal remedy and not an equitable one). While we do not doubt that the plaintiffs have incurred additional

expenses as a result of Unisys' termination of the Burroughs Medical Plan, compensation for these expenses does not come within ERISA's authorization of "appropriate equitable relief" and therefore is not available as a remedy for Unisys' breach of fiduciary duty. *See id.* at 655 (rejecting a request from ERISA plaintiffs that was "framed as an 'equitable' injunction" when "in essence, [the] request [was] for compensatory damages"); *see also Great-West*, 534 U.S. at 217, 122 S.Ct. 708 ("Like it or not, ... [the law-equity] classification and distinction has been specified by the statute; and there is no way to give the specification meaning—indeed, there is no way to render the unmistakable limitation of the statute a limitation at *all*—except by adverting to the differences between law and equity to which the statute refers."). Because the additional relief the plaintiffs seek was not typically available in equity, it is not an appropriate equitable remedy under ERISA, and we will uphold the District Court's decision on this issue.

### C. Attorneys' Fees

 "ERISA allows a prevailing party to recover a reasonable attorney's fee and costs of action." *Hahnemann Univ. Hosp.*, 514 F.3d at 310 (internal quotation marks omitted). ERISA's fee provision states: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether to award attorneys' fees, a District Court must consider several factors. *See Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983). The relevant factors include:

> "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy the award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the of-

fending parties; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' position."

*Id.* at 673; *accord Martorana v. Bd. Trs. of Steamfitters Local Union 420 Health, Welfare & Pension Fund*, 404 F.3d 797, 804 (3d Cir.2005). "[T]he Ursic factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 275 (3d Cir.2004).

The District Court, in its June 26, 2008 opinion, carefully analyzed the *Ursic* factors and then went "line, by line, by line through the billing records supporting the fee request," in the course of "conclud[ing] that a total of $48,708.58 should be stricken from the Petition," and awarding $2,266,357.92 in attorneys' fees and $97,779.98 in litigation expenses. Fee Opinion, 2008 WL 2600364, at *14 (internal quotation marks omitted). With respect to the first *Ursic* factor, culpability or bad faith, the District Court concluded that "this case does not appear to involve a simple lapse of judgment or care on the part of" Unisys, and that "[t]he duty of a fiduciary to convey complete and accurate information to beneficiaries was established long before [Unisys] engaged in the conduct at issue in this case." *Id.* at *3 (internal quotation marks omitted). As to the second factor, ability to pay, the District Court noted that the plaintiffs asserted that Unisys, "a large corporation with billions of dollars in assets, can satisfy the fee award," and that Unisys did not challenge this assertion. *Id.* at *4. Under the third factor, deterrence, the District Court determined that, because Unisys' "conduct was undertaken knowingly ...", an award of attorney's fees would deter such know-

ing conduct in the future." *Id.* For the fourth factor, benefit conferred, the District Court concluded that "[b]ased on the efforts of the Prevailing Plaintiffs, the parties have a better understanding of the strengths and weaknesses of the remaining claims, thus allowing for prompt resolution or settlement." *Id.* at *5. Finally, regarding the fifth factor, relative merits of the parties' positions, the District Court concluded that although Unisys' "legal position was not wholly without merit, . . . on balance, this factor weighs slightly in favor of an award of attorneys' fees." *Id.* In sum, the District Court stated: "No factor weighs against a fee award, and the Court finds no reason to deviate from the principle that 'the defendant in an ERISA action usually bears the burden of attorney's fees for the prevailing plaintiff or plaintiff class, thus encouraging private enforcement of the statutory substantive rights....'" *Id.* at *6 (select internal quotation marks omitted) (quoting *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir.2000)).

Despite the District Court's thorough analysis of the reasonableness of the fee award, Unisys contends that the award should be "dramatically reduced," arguing, in relation to the first factor—culpability or bad faith—that "Unisys actually prevailed on two of the three claims originally raised by Plaintiffs because of its repeated disclosure[s]," and, in relation to the fifth factor—relative merits—that "Plaintiffs have obtained only a very small portion of the relief sought." Additionally, Unisys maintains, apparently in the context of the fourth factor—benefit conferred—that "the 'prevailing' Plaintiffs recovered only a portion of the relief they sought, and two Plaintiffs lost on all of their claims."

The plaintiffs contend that the District Court correctly applied the *Ursic* factors and did not abuse its discretion in concluding that all five factors weighed in favor of the fee award. The plaintiffs also assert that, to the extent that Unisys appears to argue that the fee amount must be proportionate to the value of the relief obtained, its argument is foreclosed by *Hahnemann University Hospital*, 514 F.3d at 311, in which a "proportionality rule for attorneys' fees awarded under ERISA" was rejected. Additionally, the plaintiffs point out that "Unisys makes no argument concerning particular fee and expense entries," and instead contends that "the award should be 'substantially' reduced in some vague, undefined way."

Unisys' arguments are not persuasive and the plaintiffs' arguments help to underscore the reasonableness of the District Court's exercise of its discretion in approving the fee award. The District Court's thorough and careful analysis is consistent with our Court's caselaw on this subject and its award of attorneys' fees was not an abuse of discretion. Therefore, we will not disturb its award of fees and expenses.

## IV.

For the reasons stated above, the District Court correctly concluded that twelve of the fourteen plaintiffs established that Unisys breached its fiduciary duty to them and it ordered appropriate equitable relief to remedy Unisys' violation of ERISA. Additionally, the District Court did not abuse its discretion in awarding reasonable attorneys' fees to the plaintiffs. Accordingly, we will affirm the District Court's orders in all respects.