PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────

No. 09-4043

─────

RICHARD SHOOK;
KAREN SHOOK,

Appellants
v.

AVAYA INC.

─────

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-cv-01123)
District Judge:  Honorable David Stewart Cercone

─────

Argued September 15, 2010
Before:  SCIRICA, RENDELL and FISHER, *Circuit Judges*.

(Filed: November 2, 2010 )

Glen S. Downey (Argued)
Michael J. Healey
Douglas B. McKeechnie
Healey & Hornack

1100 Liberty Avenue, Suite C-2
Pittsburgh, PA 15222
        *Counsel for Appellants*

Michael J. Newman (Argued)
Charles M. Roesch
Dinsmore & Shohl
255 East Fifth Street
1900 Chemed Center
Cincinnati, OH 45202
        *Counsel for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Richard and Karen Shook, husband and wife, filed suit against Avaya, Inc., Richard's former employer, alleging a violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1104 and 1132. The Shooks contended that Avaya breached its fiduciary duty owed to them as participant and beneficiary under the Avaya Pension Plan through a series of misleading letters regarding Richard's pension benefits. Based on Avaya's representation of the length of Richard's service, the Shooks alleged that Richard calculated his expected pension benefit and the couple decided that Karen should retire from her job at a different company. The District Court granted Avaya's Motion for Summary Judgment, finding that Avaya did not

2

make a material misrepresentation. For the reasons stated herein, we will affirm the decision of the District Court on partly different grounds. Specifically, we hold that the Shooks' decision that Karen should retire is insufficient detrimental reliance to establish a claim for breach of fiduciary duty under ERISA.

I.

Richard Shook was employed by Avaya and its predecessor companies, including Western Electric and Octel Communications Corporation. Lucent Technologies purchased Octel in 1997. At that point, Avaya was a telecommunications unit of Lucent. Lucent and Octel subsequently entered into a Memorandum of Understanding that addressed the integration of the two companies and the effect of prior service in determining pension benefits. Pursuant to this agreement, Octel service prior to September 1, 1998 "shall count toward eligibility under the Pension Plan," but that "[f]or pension calculation purposes, a . . . pension service date shall be no earlier than September 1, 1998." (App. at 421.) On October 1, 2000, Avaya became an independent company. As a result, Avaya assumed control of the Lucent Pension Plan, of which Richard was a participant. Although Richard did not designate Karen as a beneficiary, the Avaya Pension Plan provides that pension benefits are paid to a lawful spouse if the participant and spouse are married when pension payments begin. (*Id.* at 327.)

The Avaya Pension Plan states that the Recognition of Prior Service ("RPS") date is the employee's starting date and includes prior service with predecessor companies. For

purposes of pension calculations, an employee's monthly benefit is calculated by multiplying the applicable pension range by the employee's net credited service. (*Id.* at 314.) Net credited service ("NCS") is defined as the "continuous number of years, months and days you have worked for a participating company or any other controlled group company, beginning with your most recent date of hire and ending with your retirement or other termination of employment." (*Id.*)

On October 18, 1999, the Lucent Technologies Pension Service Center sent Richard a letter stating that because "Octel is not a participant in the Lucent Technologies, Inc. Management Pension Plan (LTMPP), your Octel service will not be included in your Net Credited Service date. Accordingly, your Net Credited Service date will be 9/1/98." (*Id.* at 367.)

In response to Avaya's correspondence, Richard filed a grievance with Avaya in February 2000 contending that his RPS date was calculated improperly and that the mistake detrimentally affected his eligibility for benefits. Subsequently, on April 7, 2000, the Lucent Technologies Pension Service Center sent Richard a follow up letter regarding his RPS date. The letter noted that there was confusion regarding when prior service would be recognized for purposes of vacation and benefits. As such, the letter clarified that Richard's RPS date was October 30, 1980 and his NCS date was December 19, 1988. The letter further explained that "your NCS date will remain the same until you complete three years of continuous employment with Lucent from the Acquisition Date. At that time, your NCS date will

4

be adjusted to reflect your previous employment with Lucent." (*Id.* at 372.) The letter concluded that Richard's "supervisor will need the above-referenced information to determine [] eligibility for vacation and benefits under the Lucent Technologies Inc. Sickness and Accident Disability Benefit Plan." (*Id.*)

Richard then received another letter from the Lucent Pension Service Center on November 21, 2000 stating that his NCS date "has been established and updated in the Payroll and Personnel Systems." (*Id.* at 373.) The letter provided that Richard's "Adjusted NCS Date" was October 30, 1980. Like the April 7, 2000 letter, this letter provided that Richard's supervisor would need the document for purposes of disability and vacation benefits.

The Shooks contend that, based on the November 2000 letter, Richard calculated his expected monthly pension using the October 30, 1980 NCS date. Richard believed that he had twenty-three years of service that would be credited towards his pension. As a result, he thought he would be able to retire in 2005 with twenty-five years of service and receive a full pension. Richard was a member of the Communication Workers of America and spoke to his union representative regarding possible layoffs at the company. He also talked to co-workers about his estimates. Richard did not, however, confirm this calculation with anyone at Avaya. In late 2003, the Shooks alleged that they jointly made the decision that Karen would retire from her job at Verizon, based on their current combined income, the likelihood of layoffs at Avaya, and Richard's expected pension benefit.

5

After Karen retired, Richard learned he was going to be laid off and requested a pension calculation from Avaya. On December 14, 2004, Richard received a Pension Plan Worksheet calculating Richard's monthly benefit to be $1,469.25 based on twenty-four years and four months of service. On December 27, 2004, Avaya sent Richard a new Pension Plan Worksheet correcting its prior calculation and stating that his monthly benefit would be $880.54 based on fourteen years and seven months of service. Richard admits that he took no action based on these calculations during this thirteen day period. Richard was laid off from Avaya in January 2005. Richard unsuccessfully appealed the pension benefit calculation through Avaya's administrative procedures.

On August 16, 2007, the Shooks filed a complaint in the United States District Court for the Western District of Pennsylvania against Avaya, asserting claims for breach of fiduciary duty under ERISA, 29 U.S.C. §§ 1104 and 1132 and promissory estoppel.[1] Both parties filed cross-motions for summary judgment. The District Court granted Avaya's motion on September 16, 2009.

The District Court determined that the Shooks could not establish a breach of fiduciary duty claim because Avaya had not made a material misrepresentation regarding its pension plan. In its ruling, the District Court found that Avaya made no affirmative misrepresentation in the

_____

[1] The District Court granted Avaya's motion to dismiss the promissory estoppel claim as preempted by ERISA. The Shooks do not appeal this ruling.

correspondence prior to Karen's retirement in 2003. The District Court concluded that the Memorandum of Understanding made clear that an employee's pension service date would be no earlier than September 1, 1998. Further, the District Court determined, the letters dated October 18, 1999, April 7, 2000, and November 21, 2000, provided that Richard's NCS date was October 30, 1980, for the purpose of vacation and disability benefits only. In addition, the District Court noted that Richard did not rely on the mistake in calculating his pension benefit from the December 2004 worksheets because Karen had already retired by that time. Finally, the District Court concluded that even if there was a misrepresentation, it was not material to Karen's retirement. The District Court pointed out that the retirement decision did not affect Richard's benefits or employment. The District Court did not specifically address the element of detrimental reliance.

The Shooks timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction pursuant to 28 U.S.C. § 1291. "Our standard of review applicable to an order granting summary judgment is plenary." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quotations and citations omitted). In exercising this review, "[w]e may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party." *Id.* (quotations and citations omitted); Fed. R. Civ. P. 56(c). We may affirm the

7

order of the District Court on any grounds supported by the record. *Kossler*, 564 F.3d at 186. Additionally, "[t]o the extent that the District Court made conclusions of law, our review is *de novo*." *In re Merck & Co., Inc., Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 399 (3d Cir. 2007).

III.

The Shooks appeal the District Court's order granting summary judgment in favor of Avaya. Specifically, the Shooks argue that the District Court erred in ruling as a matter of law that the November 2000 letter was not a material misrepresentation and that the Shooks could not have reasonably relied on the letter in making the decision about Karen's retirement. Avaya counters that the District Court properly determined that the correspondence was not a material misrepresentation and that the Shooks' reliance was neither foreseeable nor reasonable.

ERISA § 404 provides:

"[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

8

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims[.]"

29 U.S.C. § 1104(a)(1). Pursuant to this provision, we have determined that a "fiduciary may not, in the performance of [its] duties, 'materially mislead those to whom the duties of loyalty and prudence are owed.'" *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (*Unisys IV*) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000)) (additional citation omitted).[2]

In order to prevail on a breach of fiduciary duty claim under ERISA, a plaintiff must establish that: "(1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation

---

[2] We will refer to the sequence of *Unisys* cases accordingly: *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896 (3d Cir. 1995) (*Unisys I*); *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255 (3d Cir. 1995) (*Unisys II*); *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 242 F.3d 497 (3d Cir. 2001) (*Unisys III*); *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 579 F.3d 220 (3d Cir. 2009) (*Unisys IV*).

or inadequate disclosure." *Unisys IV*, 579 F.3d at 228 (quotations and citations omitted). Because we hold that the decision for Karen to retire does not constitute the type of detrimental reliance necessary to establish a breach of fiduciary duty claim, we do not address whether the previously described correspondence amounts to a material misrepresentation.[3]

A plaintiff must be either a participant or a beneficiary of a plan to bring an action for breach of fiduciary duty. *See* 29 U.S.C. § 1104(a)(1). Under ERISA, a beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Richard is a participant in the Avaya Pension Plan. For Karen to recover, she must be a beneficiary. The Shooks assert that Karen is a beneficiary because even though Richard did not specifically name her as such, the terms of the Avaya Pension Plan designated her a beneficiary as Richard's spouse. We find it unnecessary to determine whether Karen is a beneficiary because, regardless of her status, the particular type of injury in this case is insufficient to give rise to a claim for detrimental reliance.

We have not addressed the precise question of whether the element of detrimental reliance is met when the alleged injury concerns a non-employee's retirement, as opposed to an employee's retirement or benefits under a plan. Detrimental reliance encompasses both an injury and

---

[3] Avaya never disputed its status as an ERISA fiduciary; therefore, this element is not in issue.

10

reasonableness. *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 242 F.3d 497, 508 (3d Cir. 2001) (*Unisys III*); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d Cir. 1994). In demonstrating sufficient reliance, the plaintiff must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough. *See, e.g., Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 571 (3d Cir. 2006); *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found.*, 334 F.3d 365, 386 (3d Cir. 2003); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 493 (3d Cir. 2000); *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1302 (3d Cir. 1993).

We noted in *Unisys III* that reliance need not be based solely on the employee's retirement decision. 242 F.3d at 508. In fact, we subsequently determined that a plaintiff's detrimental reliance "may encompass decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement." *Unisys IV.*, 579 F.3d at 229. The Shooks contend that based on Avaya's misrepresentation of Richard's NCS date, Richard calculated his expected pension benefit and the couple made the joint decision that Karen should retire from her position at Verizon. The Shooks urge us to find that this choice is an "important financial decision pertaining to retirement" as mentioned in *Unisys IV*. We decline to do so.

In prior decisions where we have found detrimental reliance in the context of a breach of fiduciary duty claim, the common thread has been that the alleged misrepresentation

11

caused an employee participant or beneficiary to make a decision regarding benefits or retirement that is related to the *employee's* plan. *See*, *e.g.*, *id.* at 232-33 (holding employees demonstrated detrimental reliance where misrepresentation caused them to make decisions regarding their retiree medical benefits under plan); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 75 (3d Cir. 2001) (finding widow beneficiary could make claim based on misrepresentation causing employee husband to decline supplemental insurance under plan); *Curcio*, 33 F.3d at 237 (holding widow beneficiary satisfied detrimental reliance element where she and employee husband refused supplemental insurance under plan due to misrepresentation); *Bixler*, 12 F.3d at 75 (determining that widow beneficiary could bring breach of fiduciary duty claim because of misrepresentation regarding her ability to obtain COBRA benefits under husband employee's benefit plan).

We have never held that a decision, whether by a participant or beneficiary, that affects a non-employee's benefits or retirement – separate and apart from the plan – is the type of injury for which a fiduciary should be responsible. Although the District Court did not specifically address detrimental reliance, it was likewise concerned with expanding a breach of fiduciary duty claim to encompass this type of injury. In its decision, the District Court expressed its hesitation to expand the "materiality" element to include a decision like Karen's retirement when she was neither an employee nor a participant in the plan. The District Court noted that no decision from our Court had ever found a misrepresentation to be material to this type of decision, or sanctioned this type of detrimental reliance in a breach of fiduciary duty claim. The District Court ultimately based its

conclusion on the fact that Richard did not make any decision regarding his benefits or retirement as a result of the alleged misrepresentation of his NCS date.

We agree with the conclusion of the District Court in this regard. Although the Shooks may have acted based on the letters – they determined that Karen should retire – this decision did not implicate Richard's or Karen's benefits under the Avaya Pension Plan. Specifically, Karen's retirement did not have an effect on Richard's pension, his benefits, or his retirement. Avaya's communications as to Richard's NCS date did not prompt Richard to change or forego benefits, or to retire. Additionally, Richard admitted that he took no action based on Avaya's initial miscalculation of his expected pension benefit in the December 14, 2004 Pension Plan Worksheet. Likewise, this choice did not impact Karen's potential benefits under the plan as a beneficiary. Her retirement from Verizon did not alter the amount she could potentially receive from Richard's pension. This type of reliance is simply too attenuated to hold Avaya liable as a fiduciary.

Moreover, we find that this type of injury is not foreseeable and therefore insufficient to establish detrimental reliance. We cautioned in *Unisys III* that "[a]n employer, even when acting in a fiduciary capacity, is not responsible for harm that is not reasonably foreseeable." 242 F.3d at 508. Here, Richard did not confirm his calculations of his expected pension benefit with any Avaya representative prior to Karen's retirement. We do not think it is reasonably foreseeable for a fiduciary to anticipate that a non-employee would retire based on representations to an employee of his

13

expected pension benefit. Accordingly, Avaya cannot be held liable for conduct that did not implicate its fiduciary responsibilities under the Avaya Pension Plan and of which it did not otherwise have knowledge.

## IV.

For the foregoing reasons, we will affirm the order of the District Court, on partly different grounds. We find that neither Richard as a participant nor Karen as a beneficiary can establish a breach of fiduciary duty claim when the alleged reliance stems from the decision that Karen, a non-employee, should retire.