NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1822
_____

JASON BARR,
                              Appellant

v.

THE COUNTY OF CLARION, ADULT PROBATION/PAROLE OFFICER
ELIZABETH B. GRAHAM and JOHN DOES 1-5,

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2:08-cv-866)
District Judge:  Honorable Nora Barry Fischer
_____

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2011
_____

Before: FUENTES and CHAGARES, <u>Circuit Judges</u>, and POLLAK, <u>Senior District
Judge</u>[*]

(Opinion filed March 14, 2011)
_____

OPINION
_____

---

[*] Honorable Louis H. Pollak, District Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

POLLAK, <u>District Judge</u>

Plaintiff Jason Barr appeals from the District Court's order granting summary judgment to the defendants for alleged violations of Barr's due process rights. For the following reasons, we affirm the judgment of the District Court.

I.

Because we write primarily for the parties, who are of course fully familiar with the background of this case, we set forth only the facts and procedural history that are of central relevance to our decision. On November 4, 1998, Barr was sentenced to seven years of probation for forgery and theft by unlawful taking by the Clarion County Court of Common Pleas. On July 18, 2001, Barr was arrested for driving under the influence and possession of marijuana. This conduct violated the terms of his probation, prompting the district attorney's office to recommend to the Court of Common Pleas that Barr's probation be revoked and that he be imprisoned and sentenced to additional probation. On December 20, 2001, Judge James G. Arner ("Judge Arner") of the Court of Common Pleas held a revocation hearing at which the prosecutor and Barr's public defender agreed to the sentencing recommendations, including a five-year probation term. Because of a transcription error, however, the order issued by Judge Arner on that date included all of the sentencing recommendations except for the five-year probation term.

On February 20, 2002, Elizabeth Graham ("Graham"), Barr's probation officer, wrote a letter to Judge Arner which said the following:

Dear Judge Arner:

2

On December 20, 2001, Jason Barr was sentenced at a [revocation] hearing on a probation violation. It was my recommendation and the recommendation of the District Attorney that Jason [Barr] receive a sentence of [not less than] twenty-three days nor more than two years less one day, followed by a consecutive five year probation period.

After checking with [court stenographer] Barb Everman, she said that her notes indicated that the consecutive probation period was [ADA Mark Aaron's] recommendation, but that it did not appear in the order. Do you have any objection to signing the attached amended order, which includes the consecutive probation? Jason [Barr] agreed to the recommendation at the hearing.

Thank you for reviewing this matter. If you have any questions, please contact me.

Respectfully,
Elizabeth B. Graham
Adult Probation/Parole Officer

Graham did not provide a copy of this letter, or the enclosed proposed order, to the district attorney, to Barr, or to Barr's public defender. Judge Arner signed the proposed order on February 25, 2002, and Barr's sentence was amended and extended by an additional five years of probationary supervision. Judge Arner did not give notice to the district attorney, to Barr, or to Barr's public defender before issuing the amended order.

In November of 2005 and July of 2006, Barr violated the conditions of his probation and was incarcerated for a total of 188 days. On October 10, 2006, Barr filed a petition to vacate illegal sentence in the Court of Common Pleas. The petition argued that under 42 Pa. C.S. § 5505,[1] a sentencing court may only amend a sentence within

---

[1] *See* 42 Pa. C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").

thirty days of the initial order.  Noting that sixty-seven days passed between the entry of the original sentence and the issuance of the amended order, the petition argued that the amended order was illegal and *void ab initio*.  On October 13, 2006, Judge Arner granted the petition.[2]

Thereafter, Barr filed the present action under 42 U.S.C. § 1983, alleging that defendants—probation officer Graham and the County of Clarion ("County") [3]—violated his constitutional due process rights.  Barr's complaint seeks to hold Graham individually liable for her actions which led to the modification of his sentence.  It also seeks to hold the County municipally liable because the Office of Adult Probation/Parole for Clarion County allegedly maintained a policy or custom of communicating with judges regarding criminal cases *ex parte*.  Following discovery, the District Court granted defendants' motion for summary judgment on February 23, 2010, finding that (1) Barr's claims were barred by the statute of limitations; (2) Barr had failed to establish that the defendants' conduct was the proximate cause of the alleged due process violation; (3) Barr failed to establish that the probation office's practice of communicating directly with Judge Arner was attributable to the County of Clarion; and (4) Barr's claims against defendant Graham were barred by qualified immunity.

---

[2]  As explained in footnote 7, *infra,* whether Judge Arner's amended order did violate § 5505 is a matter of dispute.  We find it unnecessary to resolve that dispute in this appeal. We presume, as did the district court, the invalidity of the amended order.
[3]  The complaint also included claims against several Doe defendants.  Because Barr was not able to ascertain the identities of the Doe defendants after reasonable discovery, the district court dismissed these claims.  Barr has not appealed that ruling.

Barr has appealed all of these rulings. Because we agree that Barr has failed to demonstrate proximate cause—a failure that is fatal to his claims against both Graham and the County—we affirm the judgment of the District Court on that basis, without reaching the district court's other rulings.[4]

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291. "Our standard of review applicable to an order granting summary judgment is plenary." *Kossler v. Crisanti,* 564 F.3d 181, 186 (3d Cir. 2009) (quotations and citations omitted). In exercising this review, "[w]e may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party." *Id.* (quotations and citations omitted); Fed. R. Civ. P. 56(c). We may affirm the District Court's summary judgment order on any grounds supported by the record. *Shook v. Avaya*, 625 F.3d 69, 72 (3d Cir. 2010).

---

[4] We also grant the defendants' motion for leave to file a supplemental appendix. Barr does not contest defendants' motion with respect to supplemental appendix pages 1-12. Barr does, however, object to supplemental appendix pages 13-14, which contain a letter from Judge Arner to defendants' counsel authored in December 2008 stating his "position" that defendant Graham "did not violate any of [Barr's] rights." Even if Barr is correct that Judge Arner's letter is hearsay not fitting within any exception, "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of N.J.,* 223 F.3d 220, 223 at n. 2 (3d Cir.2000). Because Judge Arner could "testify about the substance of [his letter] at trial," *Smith v. City of Allentown*, 589 F.3d 684, 694 (3d Cir. 2009), the letter may be considered on a motion for summary judgment.

III.

To properly state a claim under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment's Due Process Clause, a plaintiff must, among other things, establish that the defendant "subjected the plaintiff, or caused the plaintiff to be subjected to" the deprivation of a protected liberty interest without due process. *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989). In evaluating causation, "[i]t is axiomatic that '[a] § 1983 action, like its state tort analogs, employs the principle of proximate causation.'" *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (quoting *Townes v. City of New York,* 176 F.3d 138, 146 (2d Cir.1999)); *see also Hector v. Watt*, 235 F.3d 154, 160 (3d Cir. 2000). The concept of "proximate cause" has traditionally been defined "as a person's wrongful conduct which is a substantial factor in bringing about harm to another." *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing Restatement (Second) of Torts § 431). However, "an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about." *Id.* (citing Restatement (Second) of Torts § 440-441).

In *Egervary v. Young*, we recognized that "the actions of a judicial officer may sever the chain of causation" between the wrongful act of a party who appeared before the judicial officer and the harm that befell another as a result. *Id.* at 246. In *Egervary*, we distinguished between a party's misrepresentations of law and misrepresentations of fact in determining whether the chain of causation was broken. A judge's error of law is

6

generally sufficient to sever the chain of causation, even if a party misrepresented the state of the law to the judge, because "it is axiomatic that, in any given case, the responsibility for determining the governing law and procedures lies with the judge." *Id.* at 249. However, because a judge depends on the party appearing before her to honestly state the facts relevant to the judge's decision, a judge's actions do not sever the chain of causation where the party makes "an inadequate or false representation of the factual basis upon which the legal ruling depended." *Id.*

*Egervary* noted that the Second Circuit's decision in *Warner v. Orange County Department of Probation*, 115 F.3d 1068 (2d Cir. 1997), suggests that some qualification of this general framework is called for when the case involves the conduct of a probation officer. *See Egervary*, 366 F.3d at 249 n.7.[5] The plaintiff in *Warner* brought a § 1983 action against his probation department in Orange County, New York, alleging that a probation condition requiring his attendance at Alcoholics Anonymous ("A.A.") meetings forced him to participate in religious activity in violation of the First Amendment's Establishment Clause. The *Warner* court stated that:

---

[5] *Egervary* did not involve conduct by a probation officer. Rather, that case involved an international child custody dispute in which a private attorney, at the request of the State Department, agreed to represent the child's Hungarian father *pro bono*. 366 F.3d at 241. The private attorney appeared before the district judge at an *ex parte* hearing and persuaded the judge to issue an order requiring the child's mother to hand over the child to the private attorney for immediate transport to Hungary. *Id.* at 241-42. The attorney told the district court that the court was not required to provide the child's mother with a post-deprivation hearing, and the court did not provide such a hearing. *Id.* The mother later sued the private attorney for unconstitutionally infringing her due process rights. In that suit, we held that due process required a post-deprivation hearing, but found that the attorney's "misrepresentation . . . [was] a legal one and not an inadequate or false representation of the factual basis upon which the legal ruling depended." *Id.* at 249. We therefore held that the judge's action constituted a superseding cause. *Id.*

7

> The probation officer . . . is not a partisan advocate aligned with either the prosecutor or the defendant. He is a neutral adviser to the court. . . . Given the neutral advisory role of the probation officer toward the court, it is an entirely natural consequence for a judge to adopt the [probation officer's] recommendations as to a therapy provider without making an independent investigation of the qualifications and procedures of the recommended provider.

115 F.3d at 1072-73 (citations and alterations omitted). In *Egervary*, which involved misrepresentations of law by a party involved in an international child custody dispute, we distinguished *Warner* on the ground that judges confronting attorneys "appearing in a partisan capacity . . . should 'know[] that scrutiny is warranted.'" 366 F.3d at 249 n.7 (quoting *Warner*, 115 F.3d at 1072).

The District Court, relying on *Egervary*, held that Graham's letter was not the proximate cause of Barr's alleged due process injury because the letter contained no misrepresentations of fact and "the court acted as an intervening cause" by acting on the letter. Appellant's Appendix at 11. The District Court did not address *Egervary*'s discussion of *Warner* in its opinion, and Barr argues that *Warner*'s reasoning requires us to reverse the District Court's holding because this case involves an error by a probation officer upon whose advice it would be natural for the judge to rely.

While it is true that Pennsylvania law, like the law of New York applied in *Warner*, requires that probation officers serve a neutral advisory role, *see Commonwealth v. Rhodes*, 990 A.2d 732, 747 (Pa. Super. 2009), we reject the argument that *Warner* supports a finding of proximate cause under the circumstances of this case. *Warner* placed heavy emphasis upon the fact that:

8

[c]ourt adoption of the probation officer's recommendation is particularly likely when the recommendation deals with a provider of therapy. Judges are unlikely to possess particularized information about the relative characteristics and merits of different providers of therapy. For this type of information, courts generally rely heavily on probation department recommendations.

115 F.3d at 1073. In addition, the *Warner* court stressed that its:

discussion relates only to the selection of a therapy provider and not at all to the court's determination of appropriateness of probation and of alcohol therapy. The selection of a provider of therapy is not an issue of law, and courts are ill equipped to perform this task without relying heavily on recommendations.

*Id.* at 1073 n.4. Thus, we understand *Warner* to articulate a rule that a judge's adoption of a probation officer's recommendation will not sever the chain of causation if the recommendation involves a determination that the judge is "ill equipped" to make without "relying heavily" on information provided by the probation officer. *Id.*[6]

It is plain that Judge Arner was capable of determining, without any help from the probation office, under what circumstances he could amend a sentence after its issuance. Making this determination would presumably have required him to consult the relevant statutory provision which governs such amendments, *see* 42 Pa. C.S. § 5505, along with any judicial decisions construing that statute. These are standard judicial tasks requiring no special outside expertise or knowledge, and for this reason Judge Arner was in a position to make an "independent exercise of judicial review." *Egervary*, 366 F.3d at

---

[6] Of course, if a probation officer makes an "inadequate or false representation of the factual basis upon which [a] legal ruling depended," a judge's order based on such a misrepresentation would not constitute a superseding cause. *Egervary*, 366 F.3d at 249. Because Graham's letter does not contain any misrepresentation of fact, Barr cannot establish proximate cause on this basis.

248. Thus, we hold that Graham's *ex parte* communication with Judge Arner cannot be considered the proximate cause of any due process deprivation Barr may have suffered as a result of Judge Arner's order. Instead, at most,[7] this appears to be one of those unfortunate cases in which the sentencing judge "fail[ed] in the primary judicial duty of identifying the legal principles and procedures which govern the dispute." *Id.* at 249.

For these reasons, we affirm the judgment of the District Court.

---

[7] We note that there is some question regarding whether Judge Arner failed to comply with 42 Pa. C.S. § 5505 when he issued the amended order. Defendants argue that he was permitted to amend the sentencing order more than 30 days after it was issued, pointing to Pennsylvania state court precedents which recognize an exception to Section 5505 "where the mistake is patent and obvious." *Commonwealth v. Walters*, 814 A.2d 253, 256 (Pa. Super. Ct. 2002). Thus, if we did not resolve this case on proximate cause grounds, we would have to address whether the mistake in this case was "patent and obvious." We would also have to determine whether, even if the mistake was "patent and obvious," Judge Arner was nonetheless required to give "notice to the parties" prior to amending Barr's sentencing order. *See* 42 Pa. C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court *upon notice* to the parties may modify or rescind any order . . . ." (emphasis added)). Because we find that Graham's actions could not have been the proximate cause of any due process violation Barr may have experienced, we do not reach these questions.