**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1885
_____

JAMES CHIZMAR;
MARIANNE CHIZMAR,

Appellants

v.

BOROUGH OF TRAFFORD; KEVIN KARAZSIA;
FRANK BRUNO; BRIAN LINDBLOOM; CRAIG ALEXANDER
_____

On Appeal from the United States District Court
for the District of Western Pennsylvania
(D.C. No. 2:09-cv-00188)
District Judge: Honorable Terrence F. McVerry
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 5, 2011

Before: HARDIMAN, BARRY, and VAN ANTWERPEN, Circuit Judges

(Filed:  December 5, 2011)
_____

OPINION OF THE COURT
_____

VAN ANTWERPEN, *Circuit Judge*.

**I.**

Appellants James Chizmar ("Mr. Chizmar") and Marianne Chizmar ("Mrs.

Chizmar") appeal from the District Court's order granting the appellees' motions for

summary judgment. The Chizmars argue the District Court erred in concluding that: (1) no reasonable jury could conclude the appellants were retaliated against based on their constitutionally-protected conduct; (2) no official decision was adopted by the Borough to retaliate against the appellants; and (3) the elements of the Pennsylvania claims for wrongful use of civil proceedings and malicious prosecution were not satisfied. We have considered all of the appellants' arguments, but find no basis for reversal and will affirm.

## II.[1]

We write only for the parties and assume their familiarity with the factual and procedural history of this case, which is set forth in the District Court's opinion. The action arises from the events that ensued after an area of land within the Borough of Trafford, known as "Coventry Court," underwent development in 2007. The appellants, who live directly adjacent to this land, voiced complaints regarding the placement of a fuel tank and portable toilet, circulated a petition against the development, and attended council meetings where they voiced their opposition to the development.

The developer of the property irrevocably dedicated all streets in the proposed development to the Borough of Trafford in late March 2007. On July 23, 2007, engineering stakes were removed from part of the development located directly behind

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. The District Court had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C § 1367. We exercise jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting summary judgment. *Shook v. Avaya, Inc.*, 625 F.3d 69, 72 (3d Cir. 2010). We also conduct de novo review of a district court's legal conclusions. *Id*.

the appellants' home. The developer filed an incident report, and although the police contacted the appellants regarding the matter, no official action was taken.

In early August 2007, the developers discovered that a pipe from the appellants' property emptied onto an area of Coventry Court that was slated to become a public roadway. According to the developer, the discharge of this water prevented further construction of the road, because it undermined the road's stability and would ultimately cause it to collapse. Appellee Brian Lindbloom, the Borough's Code Enforcement Officer, and appellee Craig Alexander, the Borough's Solicitor, contacted the appellants regarding the situation, seeking to resolve the issue and avoid litigation. When these efforts failed, appellee Alexander filed an equity action on behalf of the Borough of Trafford on September 17, 2007, and when he notified the appellants of the matter he also notified them the Borough would waive all fines and end the action if the appellants would abate the water runoff. Despite statements by Mr. Chizmar that the condition was fixed, it was not, and the equity action continued.

Appellee Lindbloom issued a non-traffic citation to the appellants daily regarding the supposedly illegal discharge of water. The appellants prevailed on these alleged code violations in front of a Pennsylvania District Magistrate. Meanwhile, in the equity action a dye test was ordered by Judge Gary P. Caruso of the Court of Common Pleas for Westmoreland County. Judge Caruso stated that if the dye test showed no violation of the ordinances, then the equity action would be withdrawn. The tests, however, revealed water from the appellants' property was in fact discharging onto the road area. The Borough, through appellee Alexander, agreed with appellants' counsel and Judge Caruso

3

that the case would be withdrawn if the developer would resolve the issue by paying to install a French drain. The developer did so, and the complaint was withdrawn.

The installation of the drain, however, led to another incident. Boulders were placed on top of the drain to prevent damage from automobiles, and on the morning of August 29, 2008, one of the boulders was found in the middle of the roadway. That evening, appellee Frank Bruno, a member of the city council, stayed at night to observe the area and stated that he witnessed Mr. Chizmar push a large rock from the drain onto the roadway. Appellee Bruno notified both the Trafford police and appellee Alexander. The Trafford police issued a non-traffic citation against Mr. Chizmar, charging him with disorderly conduct. Mr. Chizmar was found guilty before a Pennsylvania District Magistrate, but was found not guilty upon a summary appeal decided by Judge Richard E. McCormick, Jr. of the Court of Common Pleas of Westmoreland County.

### III.

The appellants set forth five claims in their complaint.[2] Counts I, II, and IV are brought pursuant to 42 U.S.C. § 1983 and allege violations of rights guaranteed by the United States Constitution. Counts III and V allege violations under Pennsylvania state law.[3] Below we will set forth the claims in relation to appellees Bruno, Lindbloom, and

---

[2] The Borough of Trafford, Bruno, and Lindbloom were defendants below in all five counts. Alexander was a defendant only in Counts II and III.

[3] Appellants raise no arguments in their brief, or reply brief, regarding the dismissal of the official capacity claims against appellees Bruno, Lindbloom, and Alexander, nor the dismissal of the state law claims against the Borough of Trafford based on absolute immunity. As a result, we do not address the District Court's ruling on these claims.

Alexander (the "individual appellees"), before turning to the liability of appellee Borough of Trafford.[4]

### 1. The individual appellees did not violate the appellants' constitutional rights and did not violate Pennsylvania law.

#### a. The appellants' retaliation claims under § 1983.

"In general, constitutional retaliation claims are analyzed under a three-part test. Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). Additionally, in a case such as this where a prosecution commenced, a plaintiff must show the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006). Given their actions in circulating petitions, and speaking at council meetings, the appellants exercised protected First Amendment activity.[5] The remaining elements will be discussed below.

---

[4] After reviewing the briefs and the record below, we agree with the District Court's reasoning and conclusion that the individual appellees are being sued individually, as well as in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ("[t]he course of proceedings" dictates the nature of the liability plaintiffs seek to impose). Any immunity the appellees enjoy for actions taken in their official capacity does not apply to the claims brought against the appellees in their individual capacities. Additionally, Pennsylvania does not extend immunity to employees where their acts constitute "a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. §8550 (West 2011). The term "willful misconduct" is synonymous with "intentional tort." *Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw. 1995).

[5] The District Court accurately noted that this activity came after the placement of the diesel fuel tank that forms part of Count I. Thus, for the underlying facts of Count I related to that investigation, appellants fail to satisfy the first element of the analysis. Mrs. Chizmar stated in her deposition that appellee Lindbloom said the portable toilets

Count I focuses on the citation for disorderly conduct that was given to Mr. Chizmar, as well as essentially all other actions taken by the appellees in this matter, including the equity action, the initial placement of the diesel tank, and the investigation into the removal of property stakes. Count II focuses on the citation for violating borough ordinances, and the resulting equity suit. Court IV focuses entirely on the citation for disorderly conduct.

Turning to Count I, we agree with the District Court's analysis of the underlying sequence of events. It is undisputed the appellants had water draining on the property being developed, specifically on the location intended to become a public road. The construction of the road could not continue if the condition was not corrected, and Mr. Chizmar falsely told appellee Lindbloom that it had been corrected. This was despite appellee Alexander telling the appellants that all fines would be waived, and the action dropped, if the condition was corrected. It is clear from these facts, and the failure of the appellants to demonstrate otherwise,[6] that the attempts to enforce the municipal ordinance were lawful (in both the form of the equity action, as well as the non-traffic citation), and

were placed in retaliation, but placing portable toilets on property owned by the developer is not actionable.

[6] The appellants rely upon testimony from Brett Lloyd, a rival of appellee Bruno on the Borough of Trafford council, that appellee Bruno made statements to the effect that he would cause the appellees legal problems for their complaints. Such alleged statements would inculpate only appellee Bruno, not the other appellees. Even regarding appellee Bruno, however, the appellants still cannot demonstrate that the alleged statements show the legal actions were retaliatory, since the statements do not predate the Borough notifying the appellants of what it believed was illegal water run-off.

not retaliatory. Consequently, the appellants fail to satisfy the second and third elements of a retaliatory prosecution claim.[7]

Regarding the citation for disorderly conduct, even assuming *arguendo* that the first three elements are satisfied, because there was a non-traffic citation and a summons that resulted in a summary trial before a Pennsylvania District Magistrate, the appellants must demonstrate a lack of probable cause.[8] Given the judicial determination that Mr. Chizmar was guilty beyond a reasonable doubt, the two separate incidents of the boulder being pushed into the middle of the street, and appellee Bruno's testimony that he witnessed Mr. Chizmar move the boulder, the appellants fail to show a lack of probable cause.

Because Count II, regarding the equity action and the ordinance violation, and Count IV, regarding the disorderly conduct citation, essentially restate components of the facts underlying Count I, the above analysis of the elements of a retaliation claim applies. Appellants simply do not set forth facts to satisfy the second and third elements of a retaliation claim.

> b. Appellants' claims under Pennsylvania state law.

---

[7] This is particularly true for the parts of Count I that arise from the police investigation into the removal of the engineering stakes. The police were acting upon a report filed with them by a manager from the construction site, and the appellants have demonstrated no knowledge on the part of the appellees regarding the report.

[8] We agree with the District Court's analysis below that the equity action was a civil action, and not a criminal prosecution. Thus the appellants need not demonstrate the absence of probable cause for the specific parts of Counts I and II arising from the equity action.

Count III of the appellants' complaint accuses the appellees of committing the tort of wrongful use of civil proceedings under Pennsylvania state law. This claim arises out of the equity action filed by the Borough of Trafford. The tort applies to those who take part in civil proceedings against another and requires demonstrating:

> "(1) He act[ed] in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
> (2) The proceedings have terminated in favor of the person against whom they are brought."

42 PA. CONS. STAT. § 8351(a).

The first element clearly contains two sub-elements; one regarding the manner in which the plaintiff acted, and the second regarding the plaintiff's purpose. *See Schmidt v. Currie*, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005) (noting improper purpose must be shown in addition to acting in a grossly negligent manner or without probable cause).

The appellants in the instant case fail to allege actions that violate either prong of the statute. In their brief, appellants contend a jury could easily conclude the appellees did not have probable cause and/or acted in a grossly negligent manner. The appellants rely upon, (1) supposed mistakes made by the Borough's engineer, and appellee Alexander, in the documents filed in the equity action, (2) testimony of their expert that the filing was in bad faith, and (3) an email from appellee Alexander warning Mr. Chizmar that litigation could arise as a result of further defaming comments.

This focus is misplaced, because it is undisputed that the appellants had a pipe discharging water onto the land being developed. The legal conclusions that arise from this fact are disputed by the parties, as evidenced by the fact that the equity suit was filed

8

and proceeded for some time, but irrelevant to the case at hand. The appellees made clear at every step of the litigation that the equity action would be dropped if the drainage condition was changed, and later that they would drop the action if the results of the dye test showed there was in fact no drainage from the appellants' property. After reviewing all of the facts, we agree with the District Court's conclusion, that even drawing all inferences in the appellants favor, the jury could not reasonably find the appellees, in bringing the equity action, had any other purpose than remedying the drainage problem so that the proposed road would not be structurally compromised.

The appellants have also failed to show they satisfy the second element. Whether a withdrawal of proceedings constitutes a favorable, final termination for the purposes of a wrongful use suit is decided on a case-by-case basis, depending on the circumstances surrounding the withdrawal of the proceedings. *D'Elia v. Folino*, 933 A.2d 117, 122 (Pa. Super. 2007). The withdrawal of proceedings stemming from a compromise does not constitute, as a matter of law, a termination favorable to the plaintiff of the wrongful use suit. *Id.* When the parties agree to end the suit without further litigation, the liability of the appellees—here, those who acted on behalf of the Borough of Trafford in the equity action—"is never determined with finality." *Id.* at 123.

The appellants claim the equity action was terminated in their favor because they asserted the developer was responsible for the drainage issue, and ultimately the developer, not the appellants, rectified the situation by installing a new French drain. The appellants further argue that the cases cited below by the District Court, *D'Elia v. Folino*,

9

933 A.2d 117 (Pa. Super. 2007), and *Rosenfield v. Pa. Auto. Ins. Plan*, 636 A.2d 1138 (1994), only apply when consideration is given, or a settlement agreement is reached.

We agree with the District Court's conclusion that the agreement by the parties' attorneys ended the equity action. No monetary payment is required to demonstrate that the parties had reached this final agreement. As a result, the party who "won" the equity suit was never determined with finality.[9] Thus, the appellants fail to satisfy the second prong of the Pennsylvania statute for wrongful use of civil proceedings.

We now turn to Count V. Appellants' complaint accuses the appellees of committing the tort of malicious prosecution under Pennsylvania state law. To prevail, the appellants must prove (1) the appellees instituted proceedings against them, (2) without probable cause, (3) with malice, and (4) the proceedings must have terminated in favor of the appellants. *Kelley v. General Teamsters Local 249*, 544 A.2d 940, 941 (Pa. 1988). The appellants succeed in showing only the first element.

The appellants bear the burden of proving the lack of probable cause. *Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 86 (Pa. Super. 1995). "Probable cause is defined as '. . . a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty

---

[9] The appellants' description of the events in the equity action is misleading. Appellants argue the appellees were forced to undertake a "hasty retreat" "very soon" after Judge Caruso's comments on June 18, 2008. But the statements were made at an evidentiary hearing regarding an objection to proposed testimony, Joint Appendix at 195-97, and the matter was not withdrawn until August 27, 2008, and was done with the agreement of the appellants' attorney in the equity action. Joint Appendix, at 129, 142, 511, 514-15. Judge Caruso never determined the issue as appellants contend.

of the offense.'" *Id.* (quoting *Wright v. Schreffler*, 618 A.2d 412, 414 (Pa. Super. 1992) (omission in original)).

In the current case probable cause is clearly demonstrated by the judicial determination that Mr. Chizmar was guilty beyond a reasonable doubt, the two separate incidents of the boulder being pushed into the middle of the street, and appellee Bruno's testimony that he witnessed Mr. Chizmar move the boulder. The alibi provided by Mrs. Chizmar, and the subsequent reversal do not establish that the appellees lacked probable cause given the facts just stated. The appellants therefore fail to show the appellees lacked probable cause, which also precludes a finding of malice. *Strickland v. Univ. of Scranton*, 700 A.2d 979, 984 (Pa. Super. 1997) ("A showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense against an action for malicious prosecution, which renders immaterial the issue of whether the prosecutor's motive is malicious or otherwise.").

Accordingly,  we will affirm the District Court's order granting summary judgment to the appellees as to Counts III and V.

### 2. **Appellee Borough of Trafford is entitled to summary judgment because the appellants have failed to demonstrate that any of the appellees violated their constitutional rights.**

The Borough of Trafford, as a municipality, can be subject to liability under § 1983 as a "person." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008). For a governmental entity to be liable under § 1983, the plaintiff must demonstrate either a "policy statement, ordinance, regulation, or decision officially adopted or promulgated by [its] officers" or

11

"constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decisionmaking channels." *Monell*, 436 U.S. at 690-91. This Court has stated a municipal policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Watson v. Abington Twp*, 478 F.3d 144, 155 (3d Cir. 2007) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (alteration in original)) . A municipal custom exists where "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson*, 478 F.3d at 156 (quoting *Bielevicz*, 915 F.2d at 850).

Again, we agree with the District Court's conclusion that summary judgment should be granted in favor of appellees Bruno, Lindbloom, and Alexander on all counts. Consequently, the appellants have failed to demonstrate either a municipal policy or custom that led to violations of their constitutional rights. *See Startzell*, 533 F.3d at 204 ("Because we have found that there was no violation of Appellants' constitutional rights, we need not reach the claim against the City under *Monell*. It too was properly dismissed.").

The Borough of Trafford is therefore entitled to judgment as a matter of law. The District Court's order granting the Borough of Trafford's motion for summary judgment will be affirmed.

**IV.**

12

For the foregoing reasons, we will affirm the District Court's order granting the appellees' motions for summary judgment on all claims.