**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3094
_____

LUIS ANTONIO JIMENEZ VILLA,
Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(BIA-1 A206-907-815)
Immigration Judge: Honorable Charles Honeyman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 15, 2018

Before:  SMITH, *Chief Judge*, CHAGARES, and FUENTES, *Circuit Judges*

(Opinion filed: August 8, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

FUENTES, *Circuit Judge.*

Luis Antonio Jimenez Villa petitions for review of the Board of Immigration Appeal's order affirming the Immigration Judge's decision declining to grant Cancellation of Removal for Non-Lawful permanent Residents. The Board of Immigration Appeals and the Immigration Judge relied on 8 U.S.C. § 1101(a)(35) to invalidate a foreign marriage, which requires post-solemnization consummation under immigration law. Absent this marriage, they found Jimenez lacking his claimed parent-child relationship over his claimed step-son. For the following reasons, we grant the petition for review, and will vacate and remand.

## I.

Jimenez is a citizen of Ecuador who entered the United States illegally in 1996. In 2010, Jimenez began a relationship with Angelica Orozco, also a citizen of Ecuador. Orozco has five children—all US citizens—from a previous relationship, including her oldest son Kevin. In 2013, Orozco and her five children returned to Ecuador to care for a sick relative. In 2014, while in Ecuador, Orozco gave birth to Nathan Jimenez-Orozco, Jimenez's biological son. In the summer of 2014, Kevin returned to the United States to live with Jimenez and complete his high school education. Jimenez is solely responsible for Kevin's care. Around this time, Jimenez was arrested for, and pled guilty to, Driving Under the Influence.

The Department of Homeland Security arrested Jimenez and charged him as removable. In May 2015, Jimenez and Orozco married in an Ecuadorian proxy marriage, while Jimenez was in the United States and Orozco was in Ecuador. Jimenez conceded his

2

removability, but submitted a Form EOIR-42B, or "42B Non-LPR cancellation," application to cancel his removal. This provides for cancellation of removal where the alien has: (1) been in the United States for ten years continuously; (2) been a person of good moral character; (3) not been convicted of certain offenses; and (4) established that removal would result in exceptional and extremely unusual hardship to the applicant's spouse, parent, or child who is a citizen of the United States.[1]

The Immigration Judge declined to grant cancellation of removal, concluding Kevin did not qualify as Jimenez's child because Jimenez's marriage to Orozco was not consummated after the proxy marriage. This determination relied on 8 U.S.C. § 1101(a)(35), which defines "spouse" to *not* include: "a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated."[2] The Immigration Judge, relying on the *Matter of B-*,[3] found that a proxy marriage, not later consummated, does not confer spousal status for immigration purposes. The Immigration Judge further held that, because there was no spousal status, Jimenez could not prove "unusual hardship to the [applicant's] spouse … or child."[4] The Board of Immigration Appeals ("the Board") affirmed. This petition for review followed.[5]

---

[1] *See* 8 U.S.C. § 1229b(b)(1).

[2] AR 82–83.

[3] 5 I&N Dec. 698 (BIA 1954).

[4] 8 U.S.C. § 1229b(1)(D).

[5] The Board had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1). We review de novo the Board's legal determination that the proxy

3

## II.

Jimenez argues that we should grant the petition for review and reverse the Board's determination. First, he asserts the Board erred in requiring the proxy marriage be consummated by sexual intercourse after the wedding and in concluding that prior intercourse does not count as consummation. Second, he argues the interpretation in *Matter of B-* is unconstitutional following the shift in traditional marital and sexual mores explained in *Obergefell* and *Windsor*.[6] Third, he contends that § 1101(a)(35) is unconstitutionally vague with respect to what constitutes consummation. Because we decide this case on other grounds presented in the record, we need not address these arguments.[7]

The language in 8 U.S.C. § 1101(a)(35) clearly states that a proxy marriage does not give rise to a spousal relationship for immigration purposes unless it is consummated. However, the relevant law does not preclude a minor from becoming a "child" if the parental relationship results from a proxy marriage.[8] A "child" is "an unmarried person who is a 'stepchild, whether or not born out of wedlock, provided that the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild

---

marriage did not create a parent-child relationship. *See Si Min Cen v. Att'y Gen.*, 825 F.3d 177, 186 (3d Cir. 2016). The standard of review for issues of fact is "substantial evidence." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003).

[6] *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015); *United States v. Windsor*, 570 U.S. 744 (2013).

[7] *See Shook v. Avaya Inc.*, 625 F.3d 69, 72 (3d Cir. 2010) ("We may affirm the order of the District Court on any grounds supported by the record.") (citation omitted).

[8] *See* 8 U.S.C. § 1101(b)(1)(B).

occurred."[9]  The validity of the marriage giving rise to the parent-child relationship is a matter of law of the place where the couple married.[10]  It is undisputed that Ecuador recognizes proxy marriages.[11]  Therefore, under Ecuadorian law, Kevin is Jimenez's child and Jimenez may apply for cancellation of removal on the basis of that relationship because no provision prohibits him from doing so.

   *Matter of B-* supports this holding.  While this case held that a proxy marriage is not a valid marriage under United States law, it also found that a proxy marriage may establish a parent-child relationship.[12]  In *Matter of B-*, the Board granted a visa petition to a child born out of wedlock, but later legitimized through a locally legal proxy marriage.[13] Following the proxy marriage, the husband was not a "spouse" for immigration law purposes.[14]  However, the court implicitly found, by virtue of the proxy marriage valid under Italian law, a parent-child relationship was formed and the minor was a "child" for immigration law purposes.[15]

---

[9] *Id.*

[10] *Matter of B-*, 5 I&N Dec. at 699. The parties do not dispute the legality of proxy marriages under Ecuadorian law. *See* Petitioner Br. at 30; Respondent Br. at 14; *see also* Andrea B. Carroll, *Reviving Proxy Marriage*, 76 BROOK. L. REV. 455, 476 (2011) (proxy marriage is widely recognized, in Central and South American countries and Europe, "as they are all civilian jurisdictions with legal systems derived from Roman law, which always permitted marriages by proxy.").

[11] Carroll, *supra* note 24.

[12] *Matter of B-*, 5 I&N Dec. at 699.

[13] *Id.*

[14] *Id.*

[15] *Id.*

Similarly, the proxy marriage between Jimenez and Orozco, which was valid under Ecuadorian law, formed a parent-child relationship between Jimenez and Kevin. As *Matter of B-* illustrates, Jimenez may not be a "spouse" for immigration law purposes, however, that does not preclude him from claiming Kevin as his step-son. Accordingly, Jimenez's application must be reconsidered on the grounds that a parent-child relationship exists.

**III.**

For the foregoing reasons, we grant the petition for review, vacate the Board's decision, and remand for further proceedings consistent with this opinion.